PER CURIAM.
 

 12Relator, a member of the Judge Advocate Corps of the Louisiana National Guard, seeks review of a contempt sanction imposed against him by a military judge. For the reasons which follow, the writ application is granted and the ruling of the military judge is reversed. Background
 

 Relator served as trial counsel (the prosecutor) in a special court-martial convened against two members of the Louisiana National Guard. At the beginning of the special court-martial proceedings relator made the required statement (to satisfy the provisions of Article 27(B), LCMJ, La. R.S. 29:127(B)) that he and all members of his staff were qualified and certified to serve as trial counsel and took the mandatory oath (as provided in Article 42(A), LCMJ, La. R.S. 29:142(A)) that neither he nor any member of the prosecution staff had acted in any manner which might tend to disqualify them in the court-martial.
 

 Approximately six weeks after the court-martial proceedings were concluded, the military judge sua sponte issued an order to relator to show cause why relator should not be found guilty of contempt of court for his lack of candor to the tribunal at the court-martial. The contempt proceedings were initiated after the military judge received from the Louisiana National Guard Judge Advocate a report indicating that relator was ineligible to practice law in Louisiana when he served as trial counsel in the special court-martial and made the statement of qualification and certification and the mandatory oath. Pursuant to Article 39, LCMJ, La. R.S. 29:139, the military judge scheduled an ancillary session to the special court-martial to address the contempt issue.
 

 At the Article 39 session the following evidence was introduced: transcripts of the depositions of Major Connell Archey, a command judge advocate who supervised relator, and Colonel Jerry Crooks, the deputy commander and full time administrator of relator’s brigade, a letter from the Louisiana Supreme Court addressed to the Louisiana National Guard verifying the periods of relator’s ineligibility to practice law in Louisiana, a copy of the Louisiana Supreme Court Rule 30 regarding the scope of continuing legal education (CLE), a certificate of relator’s completion of the Judge Advocate Advanced Course, and a certificate of relator’s good standing from the United States Court, Western District of Louisiana. Relator testified in his own behalf. At the conclusion of the hearing, lathe military judge found relator to be in violation of his duty of candor to the court and ordered that he pay a fine of $100.
 

 Relator sought supervisory review of the military judge’s ruling. This Court issued an order directing the state to file a response to the writ application. The state complied with this Court’s order, and relator filed a reply to the state’s opposition.
 

 Military Judge’s Ruling
 

 The military judge concluded relator violated his duty of candor to the court and ordered that he pay a fine of $100.00 to the State Military Department within 7 days or serve 24 hours in the Dabadie Correctional Center at Camp Beauregard. While the judge did not specifically state that relator was found to be in contempt, the amount of the fine imposed was consistent with the maximum fine for a contempt violation, as provided in Article 48, (LCMJ), La. R.S. 29:148.
 

 
 *1052
 
 In addressing the issue of whether relator was disqualified from serving as trial counsel during the court-martial, the military judge concluded that relator was dishonest in several communications with the command judge advocate on multiple occasions, failed to pay certain required dues and assessments, failed to provide certain required disclosures and authorizations, failed to complete the required continuing legal education (CLE) hours for 2007, and failed to comply with the command judge advocate’s behavioral expectations. The judge stated that any one of those actions or inactions would probably have motivated the command judge advocate to relieve relator of his assignment as trial counsel, but the judge found that with the exception of relator’s dishonesty, none would have disqualified him from serving as trial counsel.
 

 With regard to the issue of whether relator was exempt from completing the required CLE hours in 2007, the judge noted that relator was on active duty though November 15, 2008, and that La. R.S. 29:419 provided relator with an exemption from dues and CLE requirements during active service and thus, during the full year of 2007.
 

 In imposing the sanction, the military judge further stated he did not believe relator understood that the supervising judge advocate was responsible for his socialization to the cultural norms of the Judge Advocate General (JAG) Corps. The judge cited an October 2008 memorandum in which relator was informed of his suspension from JAG duties and removal from the deployment list as a result of a preliminary screening inquiry pursuant to an army regulation. The judge further |4noted that although relator appeared sorry he was caught, the judge was not convinced relator regretted his actions. Noting that relator had a string of dishon-esties, the judge indicated relator should have acknowledged his wrongs and accepted responsibility.
 

 In conclusion, the military judge further reminded relator of the Army’s values of loyalty, duty, respect, selfless service, honesty, integrity, personal courage and stated that the these values were consistent with a lawyer’s duty of candor to the court.
 

 General Law
 

 The Louisiana Code of Military Justice, La. R.S. 29:101, et seq., applies to all members of the state military forces when not subject to the Uniform Code of Military Justice and while in a duty status or under a lawful order to be in a duty status. Under Article 15, LCMJ, La. R.S. 29:115, any commanding officer may impose specified non-judicial disciplinary punishments on certain personnel for minor offenses without the intervention of a court-martial. The Code also provides for three types of courts-martial: general court-martial, special court-martial, and summary court-martial.
 
 See
 
 Arts. 16-20, LCMJ, La. R.S. 29:116-120. A special court-martial may not try a commissioned officer, and a summary court-martial shall not have jurisdiction over officers.
 
 See
 
 Arts. 19 <& 20, LCMJ, La. R.S. 29:119-120.
 

 At the time of the court-martial and the Article 39 session, the military contempt article, Article 48, LCMJ, La. R.S. 29:148, provided as follows:
 

 A court-martial, provost court, or military commission may punish for contempt any person who uses any menacing word, sign, or gesture in its presence, or who disturbs its proceedings by any riot or disorder. The punishment may not exceed confinement for thirty days or a fine of one hundred dollars, or both.
 

 2009 Acts 169, § 1 amended Article 48 which now provides as follows:
 

 
 *1053
 
 A. A military judge of a special or general court-martial has the duty to require that court-martial proceedings shall be conducted with dignity and in an orderly and expeditious manner and to control the proceedings so that justice is done. A military judge may hold contempt hearings at any time during or after the completion of a court-martial. As such, the military judge of a special or general courtmartial shall have the same powers as that of a judge for a state district court for punishments of contempt of court as provided for in the Code of Criminal Procedure.
 

 B. A court-martial, provost court, or military commission may punish for contempt any person who uses any menacing word, sign, or ^gesture in its presence, or who disturbs its proceedings by any riot or disorder.
 

 C. The punishment may not exceed confinement for thirty days or a fine of one hundred dollars, or both.
 

 Did the Military Judge Court Have Jurisdiction Over the Contempt Proceeding Under Article 39, LCMJ, La. R.S. 29:139?
 

 In this matter, relator’s contempt proceeding was conducted after the court-martial proceedings ended. The notice issued by the military judge indicates the contempt proceeding was not a court-martial, but an ancillary proceeding initiated pursuant to Article 39, LCMJ, La. R.S. 29:139, which gives a military judge the authority to call the court into session for various reasons. Article 39 provides in pertinent part:
 

 A. At any time after the service of charges which have been referred for trial to a court-martial composed of a military judge and members, the military judge may, subject to R.S. 29:135, call the court into session without the presence of the members for the purpose of:
 

 [[Image here]]
 

 (4) performing any other procedural function which may be performed by the military judge under this code or under rules prescribed pursuant to R.S. 29:136 and which does not require the presence of the members of the court.
 

 These proceedings shall be conducted in the presence of the accused, the defense counsel, and the trial counsel and shall be made a part of the record.
 

 Article 36, LCMJ, R.S. 29:136, provides that the trial procedure and rules of evidence in military eases shall be prescribed by the Governor. (Executive Order BJ 2008-19, signed by Governor Jindal on May 30, 2008 provided that the 2008 Edition of the Manual for Courts-Martial, United States, shall provide the procedures and modes of proof for cases in Louisiana military courts.) Article 36 further provides that the procedures, so far as considered practical, shall apply the principles of law and rules of evidence generally recognized in the trial of criminal cases, but which may not be contrary to or inconsistent with the Louisiana Code of Military Justice. Article 39 requires the presence of the “accused” and although the contempt proceedings herein were not conducted in the presence of the | (¡defendants who were accused in the court-martial, relator, who was the accused in the contempt proceeding, was present.
 

 The provisions of Louisiana Code of Military Justice Articles 39 and 48 are almost identical to the language of Uniform Code of Military Justice Articles 39 and 48. In
 
 Summary Contempt Power in the Military: A Proposal to Amend Article ⅛8, UCMJ
 
 (1999), 160 Mil. L.Rev. 158, author Colonel David Anderson discussed the deficiencies of the military summary eon-
 
 *1054
 
 tempt power, suggested remedies, and noted that a “fix” would be to amend the contempt article in the Uniform Code of Military Justice to remove the contempt power from a court-martial and give it specifically to a military judge. The author quoted from a commentary by the drafters of the 1984 Manual for Courts-Martial which indicated that under Article 39 the military judge acts as the court-martial within the meaning of the contempt article, as follows in pertinent part:
 

 Under Article 39(a) the military judge may “call the court into session without the presence of the members,” and the military judge therefore acts as the court-martial within the meaning of Article 16 [courts-martial] and 48 [contempt].
 

 Citing
 
 United States v. Burnett,
 
 27 M.J. 99 (C.M.A.1988), as authority, the state argues that the contempt proceedings may be held after the court-martial is completed. In
 
 Burnett
 
 the court-martial proceedings were suspended while a contempt hearing was held. The reviewing court stated in dicta that while the Manual for Courts-Martial contemplates that the trial shall be suspended while the contempt proceedings take place, a military judge may delay the proceedings until the end of a trial.
 
 Burnett,
 
 27 M.J. at 107.
 

 Because the contempt proceeding was a procedural function and ancillary to the court-martial, we conclude that the military judge had the authority to call the court into session for the contempt proceeding after the conclusion of the court-martial.
 

 Did Relator’s Conduct Constitute Contempt Under Article 48?
 

 The language of the definition of contempt in Article 48 was unchanged by the 2009 amendment and is unambiguous and clear. Under the article, contempt conduct encompasses menacing words, signs, or gestures. The word menacing is defined in Webster’s II New College Dictionary as “to threaten” and “to be a threat to.” Contempt may also be conduct which disturbs the court’s proceedings by any 17riot or disorder. Disturb is defined in Webster’s II New College Dictionary as “to trouble or destroy the tranquility or serenity of,” “to trouble emotionally or mentally: upset,” and “to interfere with: interrupt.” Disorder is defined as “lack of order or regular arrangement: confusion” and “a breach of civic order or peace: public disturbance.” Relator’s conduct in making an alleged false statement regarding his certification to serve as counsel in the court-martial does not appear to fall within the type of conduct clearly prohibited and envisioned by the words of the military code’s contempt article.
 

 The language of the contempt article in the Louisiana Code of Military Justice is almost identical to that in the Uniform Code of Military Justice. The previously mentioned law review article by Colonel Anderson discusses the concern that courts and commentators have expressed about the restrictive definition of contempt in the Uniform Code of Military Justice, as follows:
 

 By the plain language of the statute, the proscribed conduct includes only a “menacing word, sign, or gesture,” or a disturbance of a court proceeding by a “riot or disorder.” If this language is strictly interpreted, contemptuous conduct under the statute may be limited to conduct that is “riotous, threatening, or confrontational.”
 

 160 Mil. L. Rev. at 202.
 

 The article further notes that Congress did not use the broader language in Article 48 that had been employed in the contempt statute in the federal criminal code.
 

 
 *1055
 
 In
 
 United States v. Praeger,
 
 149 F. 474, 485 (W.D.Tex.1907), the United States district court held that the military court was without contempt power to punish Prae-ger, a civilian witness in a court-martial, for his refusal to testify. The court noted that the contempt statute provided that the court-martial may punish at its discretion any person who “uses any menacing words, signs or gestures in its presence, or who disturbs its proceedings by any riot or disorder.” However, the district court found that the military court had no final jurisdiction over a civilian who was subpoenaed to testify before it nor power to punish the witness for contempt for refusing to testify. The court concluded that there was another remedy in the form of a criminal prosecution against the witness. In
 
 Praeger,
 
 like in the instant case, the person cited with contempt did not use any menacing word, sign or gesture in the court’s presence nor disturbed the court’s proceedings by any riot or disorder.
 

 |Jn the instant case, the military judge concluded relator violated the duty of candor to the court. Relator was essentially found to be in contempt for a violation of this duty, not for the use of any threat, disturbance, trouble, or disorder in the court’s presence or during the court’s proceedings. Thus, there does not appear to be any justification for finding that relator’s conduct constituted a violation of La. R.S. 29:148, LCMJ Article 48, the military contempt article.
 

 Did the Military Court Have Inherent Contempt Power?
 

 Since a violation of the duty of candor to the court is not punishable under the definition of contempt in Article 48, the military court must have inherent contempt power to find relator in contempt.
 

 The state cites
 
 United States v. Gray,
 
 14 M.J. 551, 552 (A.C.M.R.1982) as authority for finding the court had inherent contempt power. In
 
 Gray,
 
 the accused was a private convicted of disrespect to a commissioned officer and communicating a threat. He was sentenced to a bad-conduct discharge, which was approved by the convening authority. The charges arose when the private pointed his finger at the trial counsel during a previous court-martial and said either “I am going to get you,” or “You are going to get it.” The language was spoken softly but distinctly to the trial counsel, who had just completed an examination of the private’s wife concerning an assault by the private. The military judge was unaware of the private’s conduct until the trial counsel informed him. The accused contended that he had been denied equal protection of the law since his conduct should have been punished as a contempt under Article 48, which carried a substantially lesser penalty-
 

 On appeal, the U.S. Army Court of Military Review stated, in dicta, that it was “not convinced that the softly spoken threat uttered by the [private] to the trial counsel, which was not heard by any other parties to the trial, constitutes the type of disruptive conduct contemplated by Article 48.” The court further stated:
 

 The language of the military contempt statute has always been more limited than the traditional contempt powers of civilian courts. Article 48 had its genesis in Article 14 of the 1776 Articles of War. Through numerous revisions, the Articles of War and the subsequent Uniform Codes of Military Justice continued to describe the proscribed conduct in terms of menacing words, signs and gestures, disorder or riot.
 
 See generally
 
 McHar-dy,
 
 Military Contempt Law and Procedure,
 
 55 Mil.L.Rev. 131 (1972). As pointed out by Winthrop, “Thus language, however disrespectful, if it be not of a minacious character, cannot ... be
 
 *1056
 
 made the occasion of summary proceedings and punishment as for a|flcontempt-a defect certainly in the statute.” Ochstein,
 
 Contempt of Court,
 
 16 JAG J. 25, 27 (1962), quoting 1 W. Winthrop,
 
 Military Law and Precedents
 
 463 (2d ed. 1896). In this case there was no menace or affront to the military judge and no disruption. When the trial counsel brought the threat to the attention of the military judge, he chose not to exercise his summary contempt powers.
 

 The
 
 Gray
 
 court further noted that the then current Manual for Courts-Martial carried forward the traditional concept that a court-martial has the discretion to use the summary contempt power, initiate charges, or report the matter to the proper commander for his action, whichever it considered appropriate for the conduct involved.
 

 It has been noted in a more recent case that a military judge’s contempt power is incomplete and remains “oddly restrained and inconsistent with the other evolutionary advances.”
 
 United States v. Mahoney,
 
 36 M.J. 679, 690 n. 10 (A.F.C.M.R.1992). As further support for the lack of inherent contempt power in military courts, 57 C.J.S. Military Justice § 142 (1992) provides in pertinent part:
 

 While there is authority that [Article 48] is not an exclusive remedy for unlawful conduct which occurs during a court-martial, there is also authority that a court-martial does not have inherent authority to protect its proceedings against disruption beyond the contempt authority established in [the military code provision.]
 

 In
 
 United States Navy-Marine Corps. Court of Military Review v. Carlucci,
 
 26 M.J. 328, 335 (C.M.A.1988), the Court of Military Appeals acknowledged that Congress had not explicitly granted it contempt powers, but stated it may have inherent authority to punish for contempt. The opinion further noted that Congress might want to give attention to that omission in the Uniform Code of Military Justice, but the Code apparently has not been amended to address that omission.
 

 Louisiana military courts, like United States military and bankruptcy courts, derive their power from statute. Federal and state district courts are constitutionally created and are accorded their inherent powers from U.S. Const, art. Ill and La. Const, art. V, § 2, respectively. Prior to the recent amendment of Louisiana Code of Military Justice Article 48, Louisiana military courts were not vested with the inherent power to punish for contempt of court as are courts that are created in the Louisiana Constitution.
 
 [1]
 

 See
 
 La. Const, art. V, § 2.
 

 Although we acknowledge that the contempt procedure possibly subjected relator to a lesser form of punishment than other remedies available to the state to | ^sanction relator for his conduct, we find that in this case relator’s conduct did not constitute contempt under Article 48 and that the military court lacked inherent power to punish for contempt.
 

 Accordingly, relator’s writ application is granted and the military judge’s finding at the hearing on the rule to show cause why relator should not be found guilty of contempt of court for his lack of candor to the court and order that relator pay a fine or serve time in the correctional center at Camp Beaurgard are reversed.
 

 [1]
 

 . We do not address the issue of whether the recent amendment of Article 48, LCMJ, La. R.S. 29:148 (granting military courts the same inherent power to punish for contempt as district courts) is constitutional.